UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MICHAEL SAUNDERS,

                          Petitioner,

           -against-

JAMIE LaMANNA, Superintendent,
Green Haven Correctional Facility,[1]

                      Respondent.
-------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

18 Civ. 12406 (NSR)(JCM)

To the Honorable Nelson S. Román, United States District Judge:

      Michael Saunders ("Petitioner"), proceeding *pro se*, filed a petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 on December 28, 2018 ("Petition").[2] (Docket No. 1).  On

March 22, 2019, Attorney General Barbara Underwood, on behalf of Jamie LaManna,

Superintendent of Green Haven Correctional Facility, ("Respondent" or "State"), opposed the

Petition. (Docket Nos. 8, 9).  Petitioner filed a reply on April 5, 2019. (Docket No. 11).  For the

reasons set forth below, I respectfully recommend denying the Petition.

## I.      BACKGROUND

## A.      The Crimes, Investigation and Arrest

      Petitioner's convictions arise out of an incident that occurred on March 21, 2012. (*See*

---

[1] On January 25, 2019, Judge Román directed the Clerk of Court to remove former Attorney General Barbara Underwood from the case and substitute Superintendent Jamie LaManna pursuant to Rule 21 of the Federal Rules of Civil Procedure. (Docket No. 4).

[2] A *pro se* prisoner's papers are deemed filed at the time he or she delivers them to prison authorities for forwarding to the court clerk. *Houston v. Lack*, 487 U.S. 266, 276 (1988); *see also Walker v. Jastremski*, 430 F.3d 560 (2d Cir. 2005) (analyzing the *Houston* "prison mailbox rule").  The Petition is not dated. (*See* Docket No. 1 at 15).  However, because the timeliness of the Petition is not challenged, the Court adopts December 28, 2018, the date the Petition was filed on the Court's electronic filing system ("ECF"), as the filing date.

*generally* Trial Tr.[3] at 239).  A video surveillance system captured Petitioner speaking on his cellphone outside the apartment complex of Sabrina Durrah ("Victim") around 8:00 p.m.[4] (*Id.* at 723-25).  It was warm, but Petitioner wore "[a] hooded sweat shirt . . . [and] big bulky winter gloves . . . ." (*Id.* at 251).  While his "whole face" was visible, "an old fashioned white hockey mask" "peek[ed] out from under [his] hood . . . ." (*Id.*); (*see also id.* at 723-41).  Petitioner hung up and entered the apartment building by "using the buzzer system, going into the lobby and taking the stairs." (*Id.* at 252).  This was the only intercom activity related to Victim's apartment that evening. (*Id.* at 928-32).

At this time, Victim's neighbors heard multiple gunshots.  One neighbor had her window open and heard "something that sounded to [her] like [two] gun shots." (*Id.* at 596).  For "a good while after" the shots, she heard a baby crying. (*Id.* at 597).  The neighbor remembered that it was March 21, 2012, because she recalled mentioning the noise to her husband, who did not hear it because he was watching the New York Rangers' game. (*Id.* at 602-03, 614-20, 935-38).

Twenty-five minutes after entering the building, a video surveillance system caught Petitioner coming out of the staircase, moving quickly through the lobby, and exiting through the front entrance. (*See id.* at 251, 723-41).  He was wearing the same clothes, except the hockey mask was now over his face. (*Id.*).  He drove away shortly thereafter. (*Id.*).  Between March 21 and 24, 2012, Victim missed twenty-nine phone calls and did not send a text message or place a phone call. (*Id.* at 1175).

---

[3] "Trial Tr." refers to the transcript of Petitioner's trial, held from February 28, 2013 through March 19, 2013.

[4] The Court views the evidence presented at trial in the light most favorable to the State. *See, e.g.*, *Murden v. Artuz*, 497 F.3d 178, 184 (2d Cir. 2007).

On March 24, 2012, Victim's aunt and cousin checked in on her. (*Id.* at 297-99). They found Victim deceased with her and Petitioner's four-month-old baby at her feet. (*Id.* at 301, 321). Victim appeared bloated, her fingers were purple, and she lay in dried blood. (*Id.* at 304, 367-68). The baby, Petitioner and Victims' child, was admitted to the hospital. (*Id.* at 348). The baby was "ashy" and "pale," meaning she was likely suffering from dehydration. (*Id.* at 381-82, 465, 1331). The police arrived at Victim's apartment shortly after noon, secured Victim's apartment, and kept a log of every entrant. (*Id.* at 417, 424-25, 428-29). Paramedics observed that Victim had been dead for a while, and the baby was cold and covered in urine. (*Id.* at 379-82). Victim displayed "lividity," which meant that resuscitation efforts "would be futile." (*Id.*). The police noted that there was no sign of forced entry, (*id.* at 918), but there were bullet holes in the mattress, (*id.* at 911), and a paternity petition compelling Petitioner to pay child support was in the living room, (*id.* at 908-09).

Afterwards, the police followed Petitioner's bus route and, using a ruse that they were investigating an incident on his bus, asked him to come with them to the police station, to which Petitioner agreed. (*See, e.g.*, Pre-Trial Hr'g Tr.[5] at 24-30); (*see also* Docket No. 9-1 at 20-21, 35-50)[6] ("[Petitioner] asked what it was about to which [the detective] responded that he did not

---

[5] "Pre-Trial Hr'g Tr." refers to the transcript of the Pre-Trial Hearing. On February 13, 2013, the trial court held a combined pre-trial "*Dunaway/Huntley* [], [] *Dunaway/Mapp* [], [] *Wade* [], and [] *Sandoval* [Hearing]." Pre-Trial Hr'g Tr. at 4. "[A] *Mapp* hearing is held pursuant to *Mapp v. Ohio*, 367 U.S. 643 [ ] (1961), to determine whether evidence was obtained in violation of [a] Petitioner's Fourth Amendment right to be free from unreasonable search and seizure." *Pitter v. Fischer*, 234 F. Supp. 2d 342, 346 n.3 (S.D.N.Y. 2002). "The purpose of a *Wade* hearing is to determine before trial whether pre-trial identification procedures have been so improperly suggestive as to taint an in-court identification." *Andrews v. LeClaire*, 709 F. Supp. 2d 269, 278 n.6 (S.D.N.Y. 2010) (citing *United States v. Wade*, 388 U.S. 218 (1967)). A *Huntley* hearing is held pursuant to *People v. Huntley*, 15 N.Y.2d 72 (1965), to determine the admissibility of statements. *See Haywood v. Portuando*, 288 F. Supp. 2d 446, 450 (S.D.N.Y. 2003). And in a *Dunaway* hearing, a trial court considers whether "intervening events broke the connection between [a] petitioner's illegal detention and his confession." *Dunaway v. N.Y.*, 442 U.S. 200, 219 (1979). "In New York, [a] *Sandoval* hearing is held, upon a defendant's request, to determine the extent to which he will be subject to impeachment by cross-examination about prior bad acts if he testifies." *Grayton v. Ercole*, 691 F.3d 165, 173 (2d Cir. 2012) (citation and internal quotations omitted) (alteration in original).

[6] All page number citations to the record refer to the ECF page number unless otherwise noted.

want to speak about it at that location."). After receiving and acknowledging his *Miranda* rights, Petitioner spoke with the police for several minutes until he requested an attorney. (*See id.* at 108-09). Nevertheless, the interrogation continued. (*See id.*); (*see also* Docket No. 9-1 at 9) ("At 10:08 p.m., [Petitioner] requested to speak to an attorney [but] the detectives continued to question [him] into the early morning hours of March 27th and later in the afternoon of that day."). Police arrested Petitioner at the end of the interrogation. (*Id.*).

The police executed warrants on Petitioner's home and car. (Trial Tr. at 750). While they did not find a firearm, their search revealed particles resembling gun primer residue ("GPR") in various places. (*See id.* at 858, 1213-16). The car, which was parked at a Valhalla bus garage, was locked, wrapped in evidence tape, and towed to the police department. (*Id.* at 649-54). The car was accessible only with a key fob device. (*See id.*); (*see also* Trial Tr. at 677-78). The police recovered Petitioner's cellphone, revealing text messages with Victim about their child, and that Victim will "see [Petitioner] in court." (Trial Tr. at 1155-57).

**B.    Petitioner's Trial**

Before Petitioner's trial, defense counsel moved to exclude evidence of statements made during the police interrogation of Petitioner after he invoked his right to counsel. *See People v. Saunders*, No. 043312, 2013 WL 12109139, at *1 (N.Y. Sup. Ct. Feb. 25, 2013). The prosecution "concede[d] that [Petitioner] made an unequivocal request for counsel," *id.*, and that, as a result, "all statements [made] after [Petitioner] requested counsel are inadmissible on their case in chief," *id.* at *4. However, the prosecution reserved the right to "cross examine [Petitioner] on his statements subsequent to his request for counsel in the event [he took] the witness stand." *Id.* at *1. Defense counsel argued that any use of the statements should be precluded because the "interrogation tactics amounted to psychological coercion . . . ." *Id.* at *4.

The trial court disagreed, ruling the statements may be used for cross-examination purposes because they were made voluntarily. *Id.* at *7.

Petitioner's trial began on February 28, 2013. (Trial Tr. at 230).  The prosecution called several witnesses, including building superintendent Abraham Martinez, (*id.* at 551), Detective Jamie Douglass, (*id.* at 637), Detective Antonio Nolletti, (*id.* at 715), ballistics expert Detective Arthur Holtzman, (*id.* at 939), Detective Thomas Burke, (*id.* at 1067), forensic scientist Brandi Clark, (*id.* at 1095), forensic scientist Jeannie Valinsky, (*id.* at 1211), Chief Medical Examiner for Westchester County, Dr. Kunjlata Ashar, (*id.* at 493), forensic scientist Holly O'Connor, (*id.* at 794), and Dr. Lori Madmon, (*id.* at 961).  Petitioner called four witnesses: former EMT Al McPartlan, (*id.* at 1252), Sergeant John Glynn, (*id.* at 1262), forensic pathologist, Dr. Charles Welti, (*id.* at 1282), and pediatrician Dr. Boris Mashalov, (*id.* at 1328).

The prosecution confirmed Petitioner's presence at Victim's building through surveillance footage and intercom activity. (*Id.* at 716-19, 723-741, 928-32).  Two White Plains detectives testified on how they secured the surveillance footage. (*See, e.g.*, *id.* at 637-47, 733) (revealing Petitioner entered the building at 8:04 p.m. and left at 8:28 p.m.).  Neighbors testified that, on the same day the footage showed Petitioner at the apartment building, they also heard gunshots, (*see, e.g.*, *id.* at 596), and the prosecution established that Petitioner's car was riddled with GPR, (*id.* at 1230).  Ms. Valinksy, a forensic scientist, testified that the GPR particles found in Petitioner's home and on his car could not have come from anything other than a firearm. (*Id.* at 1228).  Dr. Ashar testified that Victim's body "had no rigidity," (*id.* at 499), indicating that Victim died about three days before the family found her, (*id.* at 511).  Detective Martin testified that he found a paternity petition in Victim's apartment initiated by Victim against Petitioner. (*Id.* at 906-11).

After the prosecution rested, defense counsel moved for an order dismissing the indictment based on the State's failure to set forth a *prima facie* case, which the court denied. (*Id.* at 1242-44).  Petitioner began his defense by calling Dr. Welti, a forensic pathologist who testified that, based solely on his review of the record, precision in establishing the time of death "is clearly not achievable," but estimated the time of death to be March 23, 2012, one day before Victim's family found her. (*Id.* at 1289, 1307).  Another defense expert, Dr. Mashalov, similarly testified that it is difficult to determine how long the baby lacked food and water, yet offered a time of death of March 23, 2012. (*Id*. at 1342).

Defense counsel also called Sergeant Glynn, who was present at the crime scene, in an attempt to introduce a recorded phone call he made from the scene to his tour commander, in which he purported to describe the state of the body. (*Id.* at 1262-67).  The prosecution's objection was sustained, and the recording was not introduced into evidence. (*Id*. at 1267).  Over the course of the trial, defense counsel objected to the admission of other evidence. (*See, e.g.*, *id.* at 728-30) (objecting to the introduction of images from the surveillance footage).

Ultimately, the jury convicted Petitioner of Second Degree Murder, Second Degree Criminal Possession of a Weapon, Second Degree Assault and First Degree Reckless Endangerment. (*Id.* at 1497).  He was sentenced to imprisonment for: (1) an indeterminate term of 25 years to life for murder; (2) a determinate term of 15 years for criminal possession of a weapon; (3) a determinate term of 7 years for assault; and (4) an indeterminate term of two years for reckless endangerment. (Sentencing Tr.[7] at 14).  Each sentence was to run concurrently. (*Id.*).

---

[7] "Sentencing Tr." refers to the transcript of Petitioner's sentencing held on July 9, 2013. (Docket No. 14).

**C.      Direct Appeal**

Petitioner filed a direct appeal to the New York State Supreme Court, Appellate Division, Second Judicial Department ("Second Department"), asserting four claims: (i) the verdict was not supported by sufficient evidence and was against the weight of the evidence; (ii) the trial court improperly denied him the right to present evidence of third-party culpability; (iii) the trial court improperly denied the admission of evidence regarding Sergeant Glynn's phone conversation at the crime scene; and (iv) his sentence was excessive. (*See* Docket No. 9-1 at 3-4).[8]  The State filed its opposition on September 26, 2016, (Docket No. 9-2), and the Second Department affirmed the conviction on May 17, 2017, *People v. Saunders*, 52 N.Y.S.3d 229 (2d Dep't 2017).  On June 15, 2017, Petitioner sought leave to appeal the Second Department's decision to the New York State Court of Appeals ("Court of Appeals"). (Docket No. 9-4).  On September 20, 2017, the Court of Appeals denied Petitioner's application. *People v. Saunders*, 67 N.Y.S.3d 136 (N.Y. 2017).

**D.      *Coram Nobis* Application**

On June 6, 2018, Petitioner, proceeding *pro se*, filed a petition for a writ of *coram nobis* to vacate the Second Department's decision, arguing he received ineffective assistance of appellate counsel. (Docket No. 9-7).  The State filed its opposition on June 20, 2018, (Docket No. 9-8), and on October 3, 2018, the Second Department denied it, finding that Petitioner "failed to establish that he was denied the effective assistance of appellate counsel." *People v. Saunders*, 82 N.Y.S.3d 737 (2d Dep't 2018).  On October 22, 2018, Petitioner sought leave to

---

[8] Petitioner's direct appeal is not dated. (*See* Docket No. 9-1).  However, Respondent does not dispute the timeliness of the Petition, (Docket No. 8 at 29), or the timeliness of the direct appeal, (*id.* at 26-27).  Thus, the Court deems Petitioner's direct appeal timely.

appeal the Second Department's decision, (Docket No. 9-10), which the Court of Appeals denied on December 11, 2018, *People v. Saunders*, 93 N.Y.S.3d 267 (N.Y. 2018).

**E.      Federal Habeas Corpus Proceedings**

Petitioner filed two successive petitions for habeas relief in this court.  The first, *Saunders v. Griffin*, 17 Civ. 8683 (NSR)(LMS), was filed on November 3, 2017.  Petitioner then moved to amend his petition, which the court denied. *Id.* at Docket No. 21.  In that Order, the court included guidance on how Petitioner could withdraw his petition, file a petition for a writ of *coram nobis* in state court, and, if denied, file a new petition for habeas relief. *Id.*  Petitioner did so, and then filed the instant Petition. (*See* Docket No. 1).  Respondent filed its opposition on March 22, 2019, (Docket Nos. 8-9), and Petitioner filed a reply on April 5, 2019, (Docket No. 11).

The Petition lists "Ineffective Assistance of Counsel" as the only ground for relief. (*See* Docket No. 1 at 5).  However, Petitioner attaches the table of contents of his Second Department appellate brief—which was the basis for his original habeas corpus petition—as an exhibit to the instant Petition. (*See* Docket No. 1 at 17; *see also* Docket No. 9-1 at 3).  Further, in his reply, Petitioner notes that he withdrew his first habeas corpus petition to file a *coram nobis* petition and has now re-filed it with this court for adjudication. (*See* Docket No. 11 ¶ 3).

Construing the Petition broadly, *see, e.g.*, *Williams v. Kullman*, 722 F.2d 1048, 1051 (2d Cir. 1983) ("pleading requirements in habeas proceedings should not be overly technical and stringent"), Petitioner asserts four grounds for relief: (1) that his conviction was not supported by sufficient evidence and went against the weight of the evidence, (*see* Docket No. 1 at 17); (2) the trial court improperly precluded Petitioner from presenting evidence of third-party culpability, (*see id.*); (3) the trial court improperly precluded evidence of a voice recording of Sergeant

Glynn, (*see id.*); and (4) ineffective assistance of appellate counsel, (*see id.* at 5).[9]  Respondent

opposed the Petition on March 22, 2019. (*See* Docket No. 9).  The Court will address each claim

in turn.

## II.      APPLICABLE LAW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state

custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death

Penalty Act of 1996" ("AEDPA"). *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  "Before a

federal district court may review the merits of a state criminal judgment in a habeas corpus

action, the court must first determine whether the petitioner has complied with the procedural

requirements set forth in 28 U.S.C. §§ 2244 and 2254." *Visich v. Walsh*, No. 10 Civ. 4160 (ER)

(PED), 2013 WL 3388953, at *9 (S.D.N.Y. July 3, 2013).[10]  The procedural and substantive

standards are summarized below.

## A.      Exhaustion as a Procedural Bar

A habeas petition may not be granted unless the petitioner has exhausted his claims in

state court. *See* 28 U.S.C. § 2254(b).  As the statute prescribes:

---

[9] Petitioner also raised an excessive sentence claim in his *coram nobis* application, (Docket No. 9-1 at 66-71), but did not raise this claim on federal habeas review, (*see* Docket No. 1 at 17).  In any event, Petitioner raised this challenge in state law terms in his *coram nobis* brief, (*see* Docket No. 9-1 at 66-69), thus he did not "fairly present" a federal constitutional challenge to his sentence to the state court on direct appeal. *See Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001); *see also Ortiz v. Bradt*, No. 13 CIV. 5420 (BMC), 2013 WL 5775695, at *6 (E.D.N.Y. Oct. 25, 2013) (holding that a habeas corpus claim "in that posture . . . cannot be heard on federal habeas corpus review.").  Petitioner can overcome this procedural default by showing: (1) cause for the default and prejudice therefrom; or (2) actual innocence such that refusal to consider the defaulted claim will result in a miscarriage of justice. *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) ("An applicant seeking habeas relief may escape dismissal on the merits of a procedurally defaulted claim only by demonstrating cause for the default and prejudice or by showing that he is actually innocent of the crime for which he was convicted.") (citation and internal quotations omitted); *Reese v. Alexander*, 37 F. App'x 5, 8 (2d Cir. 2002) (same).  Petitioner does not meet this exacting standard.  Thus, if the court deems this claim is properly raised, I respectfully recommend finding that the claim is not cognizable on federal habeas review.

[10] If Petitioner does not have access to cases cited herein that are available only by electronic database, then he may request copies from Respondent's counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the *pro se* litigant with copies of such unpublished cases and other authorities as are cited in a decision of the Court and were not previously cited by any party.")

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

> (A) the applicant has exhausted the remedies available in the courts of the State; or

> (B)(i) there is an absence of available State corrective process; or

> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

> . . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)-(c).

Exhaustion requires a prisoner to have "fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (internal quotations omitted). If a petitioner "cites to specific provisions of the U.S. Constitution in his state court brief, the petitioner has fairly presented his constitutional claim to the state court." *Davis v. Strack*, 270 F.3d 111, 122 (2d Cir. 2001); *see also Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir. 1992) (even "a minimal reference to the Fourteenth Amendment" presents a federal constitutional claim to the state courts). A petitioner may fairly present his claim even without citing to the U.S. Constitution, by, *inter alia*: "(a) [relying] on pertinent federal cases employing constitutional analysis, (b) [relying] on state cases employing constitutional analysis in like fact situations, (c) [asserting] . . . [a] claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) [alleging] . . . a pattern of facts that is well within the mainstream of constitutional litigation." *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982). Fair presentation includes petitioning for discretionary review in the state's highest appellate court. *See O'Sullivan v. Boerckel*, 526

- 10 -

U.S. 838, 839-40 (1999) ("[A] state prisoner must present his claims to a state supreme court in a petition for discretionary review in order to satisfy the exhaustion requirement").

However, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotations omitted). In such cases, although the claim is technically unexhausted, the district court may deem the claim to be exhausted but procedurally barred from habeas review. *See id.* at 140 ("[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 (1991)).

Under New York law, defendants are permitted only one direct appeal. *See Dasney v. People of the State of New York*, No. 15-cv-5734 (RJS), 2017 WL 253488, at *5 (S.D.N.Y. Jan. 19, 2017) (citing N.Y. Ct. App. R. § 500.20);[11] *see also Roa v. Portuondo*, 548 F. Supp. 2d 56, 78 (S.D.N.Y. 2008) ("Any attempt to raise these claims at this stage as part of a direct appeal would be rejected because a criminal defendant is entitled to only one direct appeal and one application for leave to appeal to the Court of Appeals."). Petitioners must raise record-based claims by direct appeal rather than by a collateral motion in state court. *See, e.g.*, *O'Kane v. Kirkpatrick*, No. 09 Civ. 05167 (HB)(THK), 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("[A]ll claims that are record-based must be raised in a direct appeal. . . . It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his

---

[11] This rule states, in relevant part, that a letter application for leave to appeal "shall indicate . . . (2) that no application for the same relief has been addressed to a justice of the Appellate Division, as *only one application is available*." N.Y. Ct. App. R. 500.20(a) (emphasis added).

conviction by bringing a claim under CPL § 440.10."), *report and recommendation adopted*, 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011); *Lowman v. New York*, No. 09-CV-0058T (MAT), 2011 WL 90996, at *9 (W.D.N.Y. Jan. 11, 2011) ("Collateral review of this claim—by way of another CPL § 440 motion—is also barred because the claim is a matter of record that could have been raised on direct appeal, but unjustifiably was not.") (citing N.Y. C.P.L. § 440.10(2)(c)).[12]

To avoid the procedural default of an unexhausted claim, a petitioner may show "cause for the default and prejudice, or that failure to consider the claim will result in miscarriage of justice, *i.e.*, the petitioner is actually innocent." *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003).

**B.      Adequate and Independent State Grounds as a Procedural Bar**

"It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman*, 501 U.S. at 729).  This preclusion applies even if the state court alternatively rules on the merits of the federal claim, so long as there is an adequate and independent state ground that would bar the claim in state court. *See, e.g.*, *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *accord Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999).

"A state court decision will be 'independent' when it 'fairly appears' to rest primarily on state law." *Taylor v. Connelly*, 18 F. Supp. 3d 242, 253 (E.D.N.Y. 2014) (quoting *Jimenez v.*

---

[12] N.Y. C.P.L. § 440.10(2)(c) states, in relevant part, that a court must deny a § 440.10 motion to vacate judgment when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his or her unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him. . . ."

*Walker*, 458 F.3d 130, 138 (2d Cir. 2006)). Typically, a ground is adequate "only if it is based on a rule that is 'firmly established and regularly followed' by the state in question." *Garcia*, 188 F.3d at 77 (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)); *see also Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003). A decision that a state procedural rule is inadequate should not be made "lightly or without clear support in state law." *Garcia*, 188 F.3d at 77 (internal quotations omitted). However, "there are 'exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.'" *Cotto*, 331 F.3d at 240 (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)). In determining whether a case is "exceptional" in that the state ground should be held inadequate, the Second Circuit uses the following factors as "guideposts":

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Id.* (internal quotations omitted).

To avoid a procedural default based on independent and adequate state grounds, a petitioner must "show 'cause' for the default and 'prejudice attributable thereto,' . . . or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris*, 489 U.S. at 262 (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 495 (1986)).

**C. AEDPA Standard of Review**

When a federal court reaches the merits of a habeas petition, AEDPA prescribes a "highly deferential" standard for reviewing state court rulings. *Lindh v. Murphy*, 521 U.S. 320,

- 13 -

333 n.7 (1997); *see also Fischer v. Smith*, 780 F.3d 556, 561 (2d Cir. 2015). An application for a writ of habeas corpus:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

Courts have interpreted the phrase "adjudicated on the merits" in AEDPA as meaning that a state court "(1) dispose[d] of the claim on the merits, and (2) reduce[d] its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (internal quotations omitted). Courts examine the "last reasoned decision" by the state courts in determining whether a federal claim was adjudicated on the merits. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

If a state court adjudicates a federal claim on the merits, the Court must apply AEDPA deference to that state court ruling.[13] 28 U.S.C. § 2254(d)(1)-(2). In the context of AEDPA deference, the phrase "clearly established Federal law" means "the holdings, as opposed to the dicta, of [the Supreme Court of the United States'] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). "A state court decision is

---

[13] If, by contrast, a state court does not adjudicate a federal claim on the merits, "AEDPA deference is not required . . . [and] conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo." *DeBerry v. Portuondo*, 403 F.3d 57, 66-67 (2d Cir. 2005).

contrary to such clearly established federal law if it 'applies a rule that contradicts the governing

law set forth in the Supreme Court's cases' or 'if the state court confronts a set of facts that are

materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a

result different from its precedent.'" *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir.

2015) (quoting *Boyette v. Lefevre*, 246 F.3d 76, 90 (2d Cir. 2001)).  A state court decision

involves an "unreasonable application" of Supreme Court precedent if: (1) "the state court

identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies

it to the facts of the particular state prisoner's case," or (2) "the state court either unreasonably

extends a legal principle from [Supreme Court] precedent to a new context where it should not

apply or unreasonably refuses to extend that principle to a new context where it should apply."

*Williams*, 529 U.S. at 407.

For a federal court to find a state court's application of Supreme Court precedent

unreasonable, the state court's decision must have been more than "incorrect or erroneous" — it

must have been "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  In

other words, "[a] state court's determination that a claim lacks merit precludes federal habeas

relief so long as 'fairminded jurists could disagree' on the correctness of [the state court's]

decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

However, "the trial court's decision need not teeter on 'judicial incompetence' to warrant relief

under § 2254(d)." *Alvarez v. Ercole*, 763 F.3d 223, 229 (2d Cir. 2014) (quoting *Francis S. v.

Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).  If a state court decision does not contain reasons for

the dismissal of a defendant's federal claim, the court must "consider 'what arguments or

theories . . . could have supported[] the state court's decision,' and may grant habeas only if

'fairminded jurists could [not] disagree that those arguments or theories are inconsistent with the

holding in a prior decision of' the Supreme Court." *Lynch v. Superintendent Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (alterations in original) (quoting *Richter*, 562 U.S. at 102).

When reviewing an application for a writ of habeas corpus, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting the state court's factual holding by "clear and convincing evidence." *Id.*; *see also Chapman v. Vanzandt*, No. 96 CIV. 6940 (JGK), 1997 WL 375668, at *4 (S.D.N.Y. July 8, 1997).

## III.   DISCUSION

### A.   Sufficiency and Weight of the Evidence

Petitioner argues that his convictions were not supported by legally sufficient evidence and went against the weight of the evidence. (*See* Docket No. 9-1 at 35-49). In response, the State contends that Petitioner's weight of the evidence claim is not cognizable on habeas review and that it presented sufficient evidence to support his convictions. (Docket No. 9 at 5-10).

First, Petitioner's weight of the evidence claim is not a cognizable claim for habeas relief. *See* 28 U.S.C. § 2254(a); *see also McCall v. Rivera*, 965 F. Supp. 2d 311, 332 (S.D.N.Y. 2013) ("[A] 'weight of the evidence claim is a New York state law claim, and it is therefore not cognizable on federal habeas review.") (citation and internal quotations omitted). Consequently, this Court is "bound by" the Second Department's denial of this claim, and I respectfully recommend denying it. *See Castaldi v. Poole*, No. 07-CV-1420 (RRM), 2013 WL 789986, at *8 (E.D.N.Y. Mar. 1, 2013).

Second, Petitioner's sufficiency of the evidence claim is "a cognizable federal constitutional claim deriving from *Jackson v. Virginia*, 443 U.S. 307 (1979)," but it is substantively meritless. *Clemmons v. Lee*, 13 Civ. 04969 (CS)(JCM), 2021 WL 6750664, at *10

(S.D.N.Y. Oct. 28, 2021), *report and recommendation adopted*, 2022 WL 255737 (S.D.N.Y. Jan. 27, 2022).  In evaluating a sufficiency of the evidence claim under the AEDPA, a petitioner "bears a very heavy burden." *Shamsuddin v. Smith*, 578 F. Supp. 3d 328, 338 (N.D.N.Y. 2022) (internal quotations omitted).  "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact *could* have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis added).  A federal court may not overturn a state court decision rejecting a challenge to the "sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) ("it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."). Instead, a federal court may overturn the state court decision on the ground that the evidence was insufficient only in the rare case that the decision was "objectively unreasonable." *Id.*

In evaluating a sufficiency of the evidence claim, federal courts "'look to state law to determine the elements of the crime.'" *Clemmons*, 2021 WL 6750664, at *11 (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)).  To establish Second Degree Murder in New York, the prosecution must prove that a person, with intent to cause the death of another person, causes the death of such person. N.Y. Penal Law § 125.25.  A person is guilty of Second Degree Criminal Possession of a Weapon when, with intent to use the weapon unlawfully against another, such person possesses a machine-gun, loaded firearm, or disguised gun. *Id.* § 265.03(1); *see also* 35C N.Y. Jur. 2d Criminal Law: Principles and Offenses § 1845 ("When there is no gun or ballistics evidence recovered, those elements . . . may be proved circumstantially through eyewitness testimony and surrounding circumstances.") (citing *People v. Samba*, 948 N.Y.S.2d 58 (1st Dep't 2012)).  To establish Second Degree Assault, the prosecution must prove that a

- 17 -

person, with intent to cause serious physical injury to another person, causes such injury. N.Y. Penal Law § 120.05(1). Finally, a person is guilty of First Degree Reckless Endangerment when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person. *Id.* § 120.25.

Based on the evidence at trial, a rational trier of fact could have found Petitioner guilty of Second Degree Murder. Security camera footage placed Petitioner at the crime scene in "unseasonable attire with a hockey mask atop his head [as he] entered the building . . . called [Victim]'s home phone from the intercom system, and was buzzed in." (*See* Docket No. 9 at 8); (*see also* Trial Tr. at 251, 928-32). The video evidence showed "that 25 minutes after he entered [Victim's building], Petitioner fled . . . wearing the same clothes, but now covering his face with a hockey mask." (Docket No. 9 at 8); (*see also* Trial Tr. at 251, 723-41). The prosecution established Petitioner's motive to commit the crime, showing that Victim "intended to sue Petitioner for child support." (Docket No. 9 at 8); (*see also* Trial Tr. at 908-09) (a paternity petition compelling Petitioner to pay child support was in Victim's living room). In addition, GPR was found "on the driver's side door handle, steering wheel, gear shift, glove box, and passenger door handle" of Petitioner's car, indicating that he recently discharged a firearm. (Docket No. 8 at 15-16) (*see also* Trial Tr. at 1228-30) (the GPR from Petitioner's car came from a gun). Thus, there was substantial evidence establishing Petitioner's guilt.

Although Petitioner challenges the State's evidence on Victim's time of death, (*see* Docket No. 9-1 at 38-41), "this Court cannot substitute its own credibility determinations for that of the jury." *Cruz v. Griffin*, 16 Civ. 8998 (CS)(JCM), 2019 WL 6220806, at *21 (S.D.N.Y. Oct. 24, 2019). The State's expert established, to a reasonable degree of medical certainty, that Victim had been dead for 2 ½ to 3 days. (Trial Tr. at 548-50) (*see also id.* at 379-82) (paramedic

observed that Victim had been dead for a long time due to signs of "lividity"). Victim's baby was also dehydrated, (*id.* at 973), making it more likely that Victim had been dead for longer than Petitioner's expert contended, (*see id.* at 381-83) (noting Victim's baby was covered in urine and that the paramedic was unable to "establish any IV access"). In addition, eyewitness testimony established that shots were fired on the day and time Petitioner was in Victim's apartment. (*See id.* at 595-98). Thus, a rational juror could have found Petitioner guilty of Second Degree Murder. *See Cavazos*, 565 U.S. at 2 (the jury may draw reasonable inferences from the evidence admitted at trial).

This evidence also supports Petitioner's conviction of Second Degree Criminal Possession of a Weapon. While the police did not recover a gun, the offense "may be prove[n] circumstantially through eyewitness testimony and surrounding circumstances." *See* 35C N.Y. Jur. 2d Criminal Law: Principles and Offenses § 1845 (citing *Samba*, 948 N.Y.S.2d 58). Here, the State presented testimony that: (i) residents heard gun shots fired at that time Petitioner was seen in the building, (*see* Trial Tr. at 595-98); and (ii) Petitioner's car was riddled with GPR, (*see id.* at 858, 1213-16) (detailing the prosecution's case against Petitioner). Therefore, there was sufficient evidence for a rational juror to find that Petitioner shot and killed Victim with a gun, and thus was guilty of Second Degree Criminal Possession of a Weapon.

Petitioner maintains that there was no evidence presented to support a finding that he caused "an injury to the baby either in the furtherance or in the course of committing the act alleged or in the course of leaving," (Docket No. 9-1 at 37), but this argument is unavailing. Petitioner ignores substantial evidence linking the baby's injuries to Victim's murder. The prosecution established that Victim was shot twice, once from behind and the other while Petitioner stood over her. (Docket No. 8 at 18). The baby was found days later at Victim's feet,

very close to the second bullet. (*See generally* Trial Tr. at 301). Witness and expert testimony described the baby's injuries from this trauma. Specifically, a witness testified that the baby was "laying face down . . . and crying . . . she was rubbing her nose on the carpet and she had a rug burn on her nose." (*Id.*). When found, the baby was suffering from moderate-to-severe dehydration. (*Id.* at 973). Therefore, a rational juror could have found Petitioner guilty of assault and reckless endangerment, and the Court will not substitute its own judgment for that of the jury. *See Shamsuddin*, 578 F. Supp. 3d at 337 (holding that "when 'faced with a record of historical facts that supports conflicting inferences [the Court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution'") (quoting *Cavazos*, 565 U.S. 1). Thus, Petitioner failed to satisfy his "heavy burden." *Id.* at 338.

Accordingly, I respectfully recommend denying Petitioner's sufficiency and weight of the evidence claims.

**B.      Trial Court's Refusal to Admit Hearsay Evidence and Petitioner's Third-Party Culpability Defense**

In his Second Department appeal, Petitioner argues that the trial court improperly (1) failed to admit the statements of Sergeant John Glynn, and (2) denied him the right to present a third-party culpability defense. (*See* Docket No. 9-1 at 51-65). In response, the State maintains that (1) the trial court's ruling on Sergeant Glynn's statements was a state law evidentiary ruling which cannot be considered on habeas review, and (2) the trial court's bar on Petitioner's third-party culpability defense is not cognizable on habeas review because the Second Department's rejection of Petitioner's claims was not contrary to, or an unreasonable application of, clearly established federal law. (*See* Docket No. 9 at 11-17).

1.    **The Hearsay Statements**

Petitioner claims that the trial court erred when it did not admit Sergeant Glynn's statements under the "present sense impression" exception to the rule against hearsay evidence, because the statements "were spontaneous descriptions of the events [Sergeant Glynn] was observing." (Docket No. 9-1 at 57-65). Respondent counters that the officer "was relaying a conclusion or opinion expressed by someone else at the scene," thus the exception does not apply. (Docket No. 9 at 17).

Generally, federal habeas review is not available to challenge state law evidentiary rulings made by a trial court. *See Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) ("state trial court evidentiary rulings generally are not a basis for habeas relief."). "When a state court has decided a case [or issue] on an independent and adequate state ground—whether substantive or procedural," federal courts may not disturb that decision. *Garraway v. Phillips*, 591 F.3d 72, 75 (2d Cir. 2010). "In reviewing a state court's evidentiary ruling in the context of a habeas petition, '[t]he first step . . . is to determine whether the state court decision violated a state evidentiary rule, because the proper application of a presumptively constitutional state evidentiary rule would not be unconstitutional.'" *Hayes v. Lee*, No. 10 Civ. 5134 (PGG)(RLE), 2013 WL 4008638, at *6 (S.D.N.Y. July 30, 2013) (citation omitted). If the Court finds that the trial court's decision violated state law, it must then evaluate whether the "evidentiary error amounted to a deprivation of due process" that was "so pervasive as to have denied [Petitioner] a fundamentally fair trial." *Barrett v. Ricks*, No. 00-CV-4636 (JBW), 2003 WL 22284164, at *7 (E.D.N.Y. Aug. 20, 2003).

In New York, the "present sense impression" exception applies where a person engages in "spontaneous descriptions of events made substantially contemporaneously with [their]

observations . . . ." *People v. Brown*, 594 N.Y.S.2d 696, 734 (1993).  Importantly, the rule allows for the admission of a hearsay statement "made while the *declarant* was perceiving the event or condition . . . ." *Id*. at 732 (emphasis added).  Here, the officer "relat[ed] what *someone else* told him," which is why the trial judge held it "does not qualify" for the present sense impression exception. (Docket No. 9-1 at 58) (emphasis added).  The trial court's ruling stayed within the bounds of state law. *See Hayes*, 2013 WL 4008638, at *8.  In any event, the testimony would have challenged the State expert's rigor mortis analysis, which Petitioner's trial counsel achieved by calling his own experts. (*See generally* Docket No. 9-1 at 41-43).  Thus, the trial judge did not commit an error, and certainly not one that would rise to the level of "fundamental unfairness." *See McCray v. Artuz*, No. 93 Civ. 5757 (LBS), 1994 WL 603057, at *2 (S.D.N.Y. Nov. 3, 1994). Therefore, Petitioner's claim that the trial court erred by not admitting Sergeant Glynn's statement is without merit.

**2.      Third-Party Culpability Defense**

Petitioner further argues that the trial court improperly barred him from presenting a third-party defense that two other individuals murdered Victim. (Docket No. 9-1 at 51-56). Respondent contends that the Second Department denied this claim on appeal, and that decision was not contrary to, or an unreasonable application of, clearly established federal law. (Docket No. 9 at 11-14).

The United States "Constitution protects a criminal defendant from the arbitrary exclusion of material evidence, and evidence establishing third-party culpability is material." *Wade v. Mantello*, 333 F.3d 51, 58 (2d Cir. 2003).  While Petitioner only cites state caselaw, he relies "on state cases employing constitutional analysis in like fact situations . . . ." *Daye*, 696 F.2d at 194 ; *see also People v. Primo*, 96 N.Y.2d 351 (N.Y. 2001) (recognizing a defendant's

right to submit evidence of third-party culpability).  Thus, Petitioner's claim is based in federal law.

The Supreme Court has held that defendants have a constitutional right to introduce evidence of third-party culpability, *see Chambers v. Mississippi*, 410 U.S. 284 (1973), but this right is "subject to 'reasonable restrictions.'" *Wade*, 333 F.3d at 58 (citing *United States v. Scheffer*, 523 U.S. 303 (1998)).  Evidentiary rules "designed to assure both fairness and reliability in the ascertainment of guilt and innocence" do not run afoul of the Constitution. *Chambers*, 410 U.S. at 302; *see also Wade*, 333 F.3d at 58 (holding "[t]he power of courts to exclude evidence through the application of evidentiary rules that serve the interests of fairness and reliability is well-settled").

Under New York law, "admissibility of third-party culpability evidence is [governed by] the general balancing test" of all evidence, meaning the judge must "weigh 'the countervailing risks of delay, prejudice and confusion . . . against the probative value of [the] evidence.'" *Francis v. Capra*, No. 18 Civ. 00628 (RA)(RWL), 2019 WL 12026839, at *8 (S.D.N.Y. Aug. 6, 2019), *report and recommendation adopted*, 2021 WL 1298481 (S.D.N.Y. Apr. 7, 2021) (citing *Primo*, 96 N.Y.2d 351).  This standard is found in most rules of evidence, such as the Federal Rules of Evidence which allows federal courts to exclude evidence if its probative value is outweighed by a risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.  New York's test analyzes such evidence in a similar manner that emphasizes fairness and reliability— a goal articulated by the Supreme Court in *Chambers*, 410 U.S. at 302.

Here, Petitioner sought to prove that two other individuals murdered Victim. (*See generally* Docket No. 9-1 at 51-56).  One individual had a criminal history, formerly lived with

Victim, had a protective order filed against him "pertaining directly to [Victim]," and stopped living with Victim after "[t]he White Plains Police Department removed him . . . because [he] had failed to register as a sex offender." (*Id.* at 52) (quotation omitted). The second individual is the same race as Petitioner, shared the same job and, like Petitioner, had a romantic relationship with Victim. (*Id*. at 53). Petitioner's defense counsel moved *in limine* to introduce a video of the first individual walking into the Victim's apartment building. (*Id*. at 51-52). The trial court did not allow Petitioner to mount either defense, holding that "third party culpability requires more of a showing than someone walking in a building during that time period . . . ." (*Id*. at 52) (internal quotations and citation omitted).

In his opening statement, Petitioner's trial counsel again tried to introduce this evidence, but the court sustained the prosecution's objection "based on the previous discussion . . . ." (*Id*. at 52-53) (noting Petitioner's trial counsel "had not set forth a foundation for this"). Later, Petitioner's counsel questioned a witness "about an interview he conducted with [the second individual] . . . about [Victim]'s death." (*Id*. at 53). Again, the trial court sustained the prosecutor's objection. (*Id*.) (rejecting Petitioner's trial counsel's argument that the line of questioning was permissible since they shared the same race and romantic relationship with Victim).

These rulings are not contrary to, or an unreasonable application of, clearly established federal law. Here, the trial court ruled on each of Petitioner's three attempts to introduce evidence of third-party culpability, and denied each of them under New York's third-party culpability evidence rule. (*See generally* Docket No. 9-1 at 51-54). Petitioner failed to provide evidence placing either man "anywhere near the scene of the murder," while the prosecution introduced significant evidence linking Petitioner to the murder, including his presence at

Victim's apartment. (Docket No. 9 at 13). The trial court denied Petitioner's defense applying a rule of evidence that is "designed to assure both fairness in reliability in the ascertainment of guilt and innocence," *Chambers*, 410 U.S. at 302, and is thus not against clearly established federal law. Therefore, the Second Department's denial of Petitioner's appeal on this claim was not contrary to, or an unreasonable application of, clearly established federal law.

Accordingly, I respectfully recommend denying Petitioner's claims that the trial court erred in its refusal to admit evidence of third-party capability and hearsay evidence.

## C. Ineffective Assistance of Appellate Counsel

In his petition for a writ of *coram nobis*, Petitioner argues that his appellate counsel was ineffective because he: (i) failed to challenge the legal sufficiency of the evidence regarding his weapons possession charge and failed to secure a plea deal, (Docket No. 9-7 at 4 ¶ 4); (ii) should have raised an ineffective assistance of trial counsel claim as trial counsel (a) failed to attack the allegedly wrongful interrogation by the police prior to trial, (*id.* at 8), and (b) did not advise him of his right to appear before the grand jury, (*id.*); and (iii) neglected to send Petitioner copies of papers filed in court, (*id.* at 6 ¶ 10).[14] Respondent argues that Petitioner's appellate counsel provided adequate assistance and his remaining complaints go against the record. (*See* Docket No. 9 at 18-23).

"The Supreme Court has long recognized that 'a person accused of a federal or state crime has the right to have counsel appointed,' and further that 'the right to counsel is the right to the effective assistance of counsel.'" *Coleman v. Racette*, 15 Civ. 4904 (NSR)(JCM), 2019 WL

---

[14] Petitioner exhausted these ineffective assistance of appellate counsel arguments in his *coram nobis* application, (*see generally* Docket No. 9-7), which the Second Department denied on October 3, 2018, *see People v. Saunders*, 165 A.D.3d 705 (2d Dep't 2018), (Docket No. 9-9). Since the Court of Appeals denied Petitioner's application for leave to appeal, (*People v. Saunders,* 32 N.Y. 3d 1128 (2018)), the Second Department's decision is entitled to AEDPA deference. *See* 28 U.S.C. § 2254(d)(1)-(2).

948401, at *12 (S.D.N.Y. Feb. 27, 2019), *report and recommendation adopted*, 2019 WL 1455171 (S.D.N.Y. Apr. 2, 2019) (quoting *Strickland v. Washington,* 466 U.S. 668, 685-87 (1984)).  To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must demonstrate that: (i) his attorney's performance "fell below an objective standard of reasonableness"; and (ii) there is a "reasonable probability" that, but for counsel's error, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687-89, 693-94.  In applying the *Strickland* standard to the instant claim, the Court's review of appellate counsel's performance must be "highly deferential," and there is a "strong presumption" of attorney competence. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).  Indeed, "[t]he *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001).

Furthermore, appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).  Often, "[t]his process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986).   In fact, failure to raise an argument on appeal constitutes ineffective assistance only when the omitted issue is clearly stronger and more significant than those presented. *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citation omitted); *see also Lynch*, 789 F.3d at 319 ("An appellate lawyer need not raise every plausible claim and has a wide degree of professional discretion to choose which issues to raise.").  Moreover, the Supreme Court has emphasized that when a petitioner brings a claim for ineffective assistance of

counsel, "AEDPA review is doubly deferential, because counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Woods v. Etherton*, 578 U.S. 113, 117 (2016) (citation and internal quotations omitted); *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (explaining that the doubly deferential standard of review must give "both the state court and the defense attorney the benefit of the doubt"). Put differently, to succeed on an ineffective assistance claim, a petitioner must demonstrate that there is a reasonable probability that the omitted claim would have been successful on appeal before the state's highest court. *See Mayo*, 13 F.3d at 534.

Petitioner's claim of ineffective assistance of appellate counsel fails to meet this standard. As a threshold matter, the Court notes that Petitioner's appellate counsel filed a sixty-five page brief raising four separate issues, citing to case law, and offering compelling arguments. (*See* Docket No. 9-1). Counsel attacked the prosecution's case, highlighted favorable evidence that was deemed inadmissible, and argued to reduce Petitioner's sentence. (*See id.*). This bolsters the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

As to Petitioner's specific claims, the Second Department denied Petitioner's claims on the merits, *People v. Saunders*, 82 N.Y.S.3d 737 (2d Dep't 2018), so that ruling is entitled to AEDPA deference. *See* 28 U.S.C. § 2254(d)(1)-(2). First, Petitioner faults his counsel for not raising "more issues [from trial] . . . [which contained] meritorious issues" for Petitioner's appeal. (Docket No. 9-7 at 7 ¶ 12) (arguing counsel should have focused on the absence of a gun to challenge Petitioner's Criminal Possession of a Weapon conviction and to secure Petitioner a plea deal). However, federal law does not require counsel to have raised every non-frivolous argument on appeal. *See, e.g.*, *Jones v. Barnes*, 463 U.S. 745, 753 (1983). Counsel focused on

the sufficiency and weight of the evidence, two trial court evidentiary rulings, and Petitioner's sentence. (*See generally* Docket No. 9-1).  Counsel cannot be faulted for failing to argue that a gun was never recovered to support Petitioner's Criminal Possession of a Weapon charge, as such evidence is not the *sine qua non* of that crime. *See, e.g.*, 35C N.Y. Jur. 2d Criminal Law: Principles and Offenses § 1845 (Weapons possession "may be proved circumstantially through eyewitness testimony and surrounding circumstances.").  Moreover, Petitioner's appellate counsel attacked the prosecution's experts and arguments on the weight of the GPR evidence. (*Id*. at 45) (noting the possibility that it came from the police).  Finally, because the prosecution holds the discretion on the decision of offering a plea deal, Petitioner's trial counsel could not be faulted for not receiving one. *See, e.g.*, *People v. Antonio*, 574 N.Y.S.2d 718 (1st Dep't 1991). Thus, counsel did not act unreasonably by failing to obtain a plea deal and not highlighting the lack of gun-related evidence.

Second, Petitioner complains that his appellate counsel should have raised an ineffective assistance of trial counsel "or prosecutorial misconduct" claim based on trial counsel's failure to attack the police's wrongful interrogation of Petitioner. (Docket No. 9-7 at 6 ¶ 8).  However, trial counsel did, in fact, successfully limit the introduction of Petitioner's statements made after he invoked his *Miranda* rights. *See Saunders*, 2013 WL 12109139, at *1, *4 (following trial counsel's omnibus motion, the prosecution "concede[d] that [Petitioner] made an unequivocal request for counsel," thus "all statements [made] after [Petitioner] requested counsel [we]re inadmissible on their case in chief").  Thus, Petitioner's claim is meritless.

Third, Petitioner argues that counsel failed to inform him that he had a right to appear before a grand jury. (Docket No. 9-7 at 4 ¶ 4).  However, this is not a proper claim for federal habeas review. *See Afflic v. New York*, No. 01 CIV. 6152 (JSM), 2002 WL 500373, at *1

(S.D.N.Y. Apr. 3, 2002) ("Petitioner's claim that he was not advised of his right to appear before the Grand Jury does not present an issue of constitutional dimension, but merely one of state law."); *see also Velez v. People of the State of N.Y.*, 941 F. Supp. 300, 315 (E.D.N.Y. 1996) ("Petitioner's assertion of a defective grand jury proceeding in the state court, albeit within the confines of an ineffective assistance of counsel claim, is not cognizable on federal habeas corpus."). Thus, the Court cannot review this claim.

Fourth, Petitioner argues that his appellate counsel did not send him "a copy of the District Attorney's Appellate brief . . . despite the petitioner requesting a copy of [it]." (Docket No. 9-7 at 6 ¶ 10). Petitioner has not shown how appellate counsel's failure to send him these materials prejudiced him. *See, e.g.*, *Farr v. Greiner*, Nos. 01-cr-6921(NG)(MDG), 01-cv-6921 (NG)(MDG), 2007 WL 1094160, at *38 (E.D.N.Y. Apr. 10, 2007) (denying habeas relief where "[petitioner] has not demonstrated any prejudice stemming from appellate counsel's failure to communicate with him"). Since Petitioner has not articulated any prejudice stemming from counsel's decisions, Petitioner's claim is without merit.

For his fifth and sixth claims, Petitioner argues his appellate counsel did not raise an ineffective assistance of trial counsel claim for trial counsel's failure to object to admission of evidence showing the GPR on the driver's side door, and call a witness regarding a letter from the New York Office of Children and Family Services ("OCFS"). (Docket No. 1 at 5). Respondent argues that Petitioner did not include these claims in his *coram nobis* petition, thus they are procedurally barred. (Docket No. 9 at 24-26).

AEDPA requires a petitioner to have "fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." *Turner*, 262 F.3d at 123 (2d Cir. 2001) (internal quotation marks omitted). On review of Petitioner's filings, he did

not raise these arguments in his direct appeal or his writ of error *coram nobis*.  Therefore, they are procedurally barred from habeas review. *See* 28 U.S.C. § 2254.  Petitioner's claim is also procedurally barred from further state court review because New York allows defendants only a single appeal from conviction, New York Crim. Procedure Law § 450.10, and record-based collateral appeals are not permitted, New York Crim. Procedure Law § 440.10.  "When a claim is in that posture, it . . . cannot be heard on federal habeas corpus review." *Ortiz v. Bradt*, No. 13 CIV. 5420 (BMC), 2013 WL 5775695, at *6 (E.D.N.Y. Oct. 25, 2013).[15]

Moreover, Petitioner's claims fail on the merits.  Petitioner complains that his trial counsel did not challenge the admission of the GPR evidence. (Docket No. 1 at 5).  However, in Petitioner's Second Department appeal, he notes that trial counsel attacked the presence of GPR on his car. (*See, e.g.*, Docket No. 9-1 at 45).  Thus, this contention is without merit. *See Strickland*, 466 U.S. at 689 (holding that strategic decisions that proved unsuccessful cannot form the basis of a habeas petition).  Petitioner also argues appellate counsel should have raised an ineffective assistance of trial counsel claim for failing to introduce a letter from the OCFS. (Docket No. 1 at 5).  The Court does not find this argument "clearly and significantly" stronger than those argued by appellate counsel. *See Mayo*, 13 F.3d at 533.  Therefore, even if these claims are not procedurally barred, they fail on the merits.

Accordingly, the Court respectfully recommends denying Petitioner's ineffective assistance of appellate counsel claim.

---

[15] Although a petitioner can overcome this procedural default by showing (1) cause for the default and prejudice therefrom; or (2) actual innocence such that refusal to consider the defaulted claim will result in a miscarriage of justice, Petitioner has failed to do so. *Carvajal*, 633 F.3d at 104 ("An applicant seeking habeas relief may escape dismissal of the merits of a procedurally defaulted claim only by demonstrating cause for the default and prejudice or by showing that he is actually innocent of the crime for which he was convicted") (citation omitted); *Reese*, 37 F. App'x at 8 (same).

## IV.  CONCLUSION

For the foregoing reasons, I conclude and respectfully recommend that the Petition be denied in its entirety.  Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

The Clerk of Court is requested to mail a copy of this Report and Recommendation to the *pro se* Petitioner.

## V.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts, the parties shall have fourteen (14) days from the receipt of this Report and Recommendation to serve and file written objections.  If copies of this Report and Recommendation are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of the same to file and serve written objections. *See* Fed. R. Civ. P. 6(d).  Objections and responses to objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Nelson S. Román at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Requests for extensions of time to file objections must be made to the Honorable Nelson S. Román and not to the undersigned.  Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be

- 32 -

rendered. *See* 28 U.S.C. § 636(b)(1); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

Dated:    February 8, 2024
           White Plains, New York

**RESPECTFULLY SUBMITTED:**

JUDITH C. McCARTHY
United States Magistrate Judge